IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLEVELAND CONSTRUCTION, INC., | ) | CASE NO. 1:12 CV 1680 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| AJM CONTRACTORS, INC., *et al.*, | ) | |
| | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | **AND ORDER** |

## Introduction

Before me[1] in this diversity action arising out a contract dispute[2] is a motion by defendant AJM Contractors, Inc. ("AJM") seeking dismissal for want of personal jurisdiction, or, alternatively, requesting a change of venue.[3] Plaintiff Cleveland Construction, Inc. ("CCI") has opposed AJM's motion,[4] and AJM has replied to that opposition.[5] AJM and CCI have participated in an oral argument on the motion,[6] and unsuccessfully attempted to mediate their dispute.[7]

---

[1] The parties have consented to my exercise of jurisdiction. ECF # 13.

[2] ECF # 1.

[3] ECF # 9. Defendant Hartford Casualty Insurance Co. filed a notice joining that portion of AJM's motion that seeks to change venue. ECF # 11.

[4] ECF # 15.

[5] ECF # 16.

[6] ECF # 19.

[7] ECF # 20.

For the reasons that follow, I will conclude that personal jurisdiction over AJM exists by reason of its agreeing to a contractual forum selection clause specifying Lake County, Ohio, as the place where any claims "shall be" brought, and that this forum selection clause establishes proper venue in this Court.

## Facts

The relevant facts are neither extensive nor disputed.

CCI, an entity located in Mentor, Ohio, contracted with Wal-Mart Stores, Inc. to build a Wal-Mart Supercenter store in Seacaucus, New Jersey.[8] In order to discharge its obligation as the general contractor under that agreement, CCI then entered into a subcontract with AJM, a Clifton, New Jersey, company, to perform certain work on the New Jersey Wal-Mart project.[9] Under the terms of the subcontract, AJM provided CCI with a performance bond from defendant Hartford.[10]

The present dispute arises from CCI's claim that some of the site grading and paving work done by AJM under the subcontract "was of inferior quality and did not meet the Project's requirements."[11] CCI asserts that multiple efforts to either obtain remedial action

---

[8] ECF # 1, Attachment, Ex. A at 1.

[9] *Id.*

[10] *See*, ECF # 1 at ¶ 6.

[11] *Id.* at ¶ 12.

from AJM, or to collect on the bond from Hartford, were unsuccessful.[12] Relying on a forum selection clause in the subcontract,[13] CCI initiated suit against AJM and Hartford by bringing an action in the Lake County, Ohio, Common Pleas Court, which the defendants removed here.

That forum selection clause, which is contained in the subcontract as paragraph 37 with the heading "Governing Law," reads in its entirety:

> This Agreement shall be governed by the laws of the State of Ohio. Any claims, actions, or causes of action arising out of or relating to this Agreement shall be brought in Lake County, Ohio, U.S.A.[14]

For its part, AJM contends that it performed its work in accordance with the specifications provided to it by CCI.[15] It further contends that "assuming" some of the paving work on the site does not conform to guidelines set forth in the Americans with Disabilities Act, "then the specifications provided by CCI must have contained incorrect [site] elevations or other mistaken information."[16] Stated differently, AJM maintains that CCI's actual claim may be against Wal-Mart, the owner, because Wal-Mart's engineer prepared the site elevation AJM alleges must have been defective.[17]

---

[12] *Id.* at ¶¶ 23-29.

[13] *Id.* at ¶ 8.

[14] ECF # 1, Attachment, Ex. A at ¶ 37.

[15] ECF # 9 at 4.

[16] *Id.*

[17] *Id.*

In that regard, AJM now argues that venue should be established by reference to paragraph 30(e) of the subcontract, which states:

> It is specifically agreed and understood, that to the extent possible and permitted by the Contract Documents, all parties necessary to resolve a claim or dispute shall be parties to the same dispute resolution proceeding. To the extent that a Claim or Dispute between C.C.I. and a Subcontractor involves, in whole or in part, claims between C.C.I. and the Owner, such claim or dispute shall be decided by the same tribunal and in the same forum as claims or disputes between C.C.I. and the Owner.[18]

In turn, CCI and Wal-Mart in their contract selected "federal and/or state courts of the State in which the Project is located" – that is, New Jersey – as the forum for resolving disputes concerning "any action or suit concerning the Contract Documents or related matters."[19]

Thus, AJM contends that the provisions of the CCI-Wal-Mart contract and the subcontract between CCI and AJM quoted above "mandate that jurisdiction is only appropriate in the state or federal courts in New Jersey because the dispute between the parties to this suit also involves claims between [CCI] and Wal-Mart."[20]

---

[18] ECF # 1, Attachment, Ex. A at ¶ 30(e).

[19] ECF # 9 at 7 (quoting ECF # 9, Attachment, Ex. A, Marino Ex. 1 (Wal-Mart-CCI contract) at Article 23.8).

[20] ECF # 9 at 7.

## Analysis

**A.  Standards of review**

*1.  Forum selection clause*

In *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*,[21] the United States Supreme Court recently restated the rule that "a forum selection clause be given 'controlling weight in all but the most exceptional cases.'"[22] When faced with a defendant's transfer of venue motion arising under 28 U.S.C. § 1404(a), the Court in *Atlantic Marine Construction* found that because a valid forum selection clause of itself represents the parties' own agreement as to the most proper forum, a court addressing such a motion "should not consider arguments about the parties' private interests," but rather "must deem the private interest factors to weigh entirely in favor of the preselected forum."[23] As a consequence, the Court noted, courts in such a situation may consider transfer arguments grounded only on public-interest factors, with the "practical result" being that "forum-selection clauses should control except in unusual cases."[24]

---

[21] *Atlantic Marine Constr. Co. v. U.S. District Court for the Western Dist. of Texas*, __ U.S. __, 134 S. Ct. 568 (2013).

[22] *Id.* at 581 (quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (Justice Kennedy, concurring) (1988)).

[23] *Id.* at 582.

[24] *Id*.

In sum, *Atlantic Marine Construction* re-emphasized the rubric that "[w]hen parties have contracted in advance to litigate disputes in a particular form, courts should not unnecessarily disrupt the parties' settled expectations."[25]

The Sixth Circuit Court of Appeals has indicated that a federal court sitting in diversity jurisdiction "may apply either Ohio law or federal law in determining the enforceability of a forum selection clause, since each treat clauses in a similar manner."[26] Both federal courts and Ohio state courts have found valid and enforced forum selection clauses entered into freely and without fraud.[27]

## 2.     Personal jurisdiction/valid forum selection clause

As Judge Lioi observed in *Filtrexx International, LLC v. Truelson*,[28] "[t]he use of a forum selection clause is one way in which a contracting party may agree in advance to

---

[25] *Id.* at 583.

[26] *General Elec. Co. v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1098 n.3 (6th Cir. 1994).

[27] *See*, *e.g.*, *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 593-94 (1991) (enforcing a nonnegotiated forum selection clause between an individual and a corporation); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12-13 (1972) ("[A] freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power ... should be given full effect."); *Kennecorp Mtge. Brokers v. Country Club Convalescent Hosp.*, 66 Ohio St. 3d 173, 176, 610 N.E.2d 987 (1993) (holding that a forum selection clause contained in a commercial transaction is valid and enforceable absent evidence of fraud or overreaching).

[28] *Filtrexx Int'l, LLC v. Truelsen*, No. 5:12CV58, 2013 WL 587582 (N.D. Ohio Feb. 13, 2013).

submit to the jurisdiction of a particular court."[29] Judge Gwin, in addressing the effect of a valid forum selection clause on personal jurisdiction, stated that "[b]y consenting to venue in Ohio [by means of a forum selection clause], [a party] consent[s] to personal jurisdiction here."[30]

### 3.     *Ohio rules of contract interpretation*

Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the Court.[31] A forum selection clause is part of a contract and the principles of contract interpretation apply, including giving the language its ordinary meaning.[32] In interpreting disputed contract provisions, the Court should discern the intent of the parties and resolve ambiguities against the drafter.[33] "The intent of the parties presumably resides in the language they chose to use in their agreement."[34] Contractual language is ambiguous "only where its meaning cannot be determined from the four corners of the agreement or

---

[29] *Id.*, at *5 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *Zapata Off-Shore Co.*, 407 U.S. at 15).

[30] *ECHO Health, Inc. v. NexPay, Inc.*, No. 1:13-CV-1563, 2013 WL 5952182 (N.D. Ohio Nov. 6, 2013) (citing *SeePreferred Capital Inc. v. New Tech Eng'g, LP*, No. 5:04CV2301, 2005 U.S. Dist. LEXIS 32619, at *17 (N.D. Ohio Mar. 8, 2005)).

[31] *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir.1993) (applying Ohio law).

[32] *In re Delta Am. Re Ins. Co.*, 900 F.2d 890, 892-93 (6th Cir.1990).

[33] *Id.*

[34] *Graham v. Drydock Coal Co.*, 76 Ohio St. 3d 311, 313, 667 N.E.2d 949 (1996).

where the language is susceptible of two or more reasonable interpretations."[35] In determining whether contractual language is ambiguous, the contract "must be construed as a whole,"[36] so as "to give reasonable effect to every provision in the agreement."[37]

**B.  Application of standards – after reviewing the contracts here under Ohio's rules for contract interpretation, venue is proper in the Northern District of Ohio by reason of the applicable forum selection clause, and so AJM's motion to dismiss or to change venue is denied. Further, by agreeing to venue in the Northern District of Ohio, AJM has consented to jurisdiction here.**

The dispositive issue here is the narrow question of whether there now exists a dispute involving Wal-Mart, CCI, and AJM that would locate the proper venue in New Jersey under the terms of the contract between CCI and Wal-Mart. Although AJM strenuously argues that such a dispute ought to exist, the evidence required to create such a conflict by AJM's contract with CCI does not exist.

As noted earlier, there is no question that the subcontract between CCI and AJM is governed by the laws of Ohio.[38] Because it is initially necessary to construe that agreement in order to determine if there is a dispute that would require adjudication under CCI's

---

[35] *Covington v. Lucia*, 151 Ohio App. 3d 409, 414, 784 N.E.2d 186 (Ohio Ct. App. 2003) (quoting *Potti v. Duramed Pharms. Inc*., 938 F.2d 641, 647 (6th Cir.1991)).

[36] *Tri–State Group, Inc. v. Ohio Edison Co.*, 151 Ohio App. 3d 1, 9, 782 N.E.2d 1240 (Ohio Ct. App. 2002) (quoting *Equitable Life Ins. Co. of Iowa v. Gerwick*, 50 Ohio App. 277, 283, 197 N.E. 923 (Ohio Ct. App. 1934)).

[37] *Stone v. Nat'l City Bank*, 106 Ohio App. 3d 212, 221, 665 N.E.2d 746 (Ohio Ct. App. 1995).

[38] ECF # 1, Attachment, Ex. A at ¶ 37.

agreement with Wal-Mart, I will consider the specific terms of the subcontract between CCI and AJM under the contract interpretation rules of Ohio.

Paragraph 30 of the subcontract, headed "Disputes," begins at subsection (a) by stating that "[a]ll claims, disputes, and other matters in controversy or question between CCI and the Subcontractor arising out of or related to this Subcontract shall be decided in accordance with this section."[39] This provision is followed at subsection (b), which further provides that if any dispute arises between AJM and CCI involving "any aspect" of the Wal-Mart/CCI contract or the "correlative rights and duties of [Wal-Mart] as defined in [that contract]" then CCI's rights as to any such claim "shall be determined solely" by the applicable provisions of the CCI/Wal-Mart contract, "including any dispute determination provision set forth in [that contract]."[40]

Critically, subsection (c) further states that AJM is to give C.C.I. written notice of "any action, which [AJM] desires C.C.I. to take [on] [AJM's] behalf against [Wal-Mart] in connection with any dispute identified in Paragraph 30(b)," including submitting the claim first to arbitration if required by the CCI/Wal-Mart contract.[41] This subsection also makes AJM responsible for "preparation, presentation and/or prosecution of any such proceeding

---

[39] *Id.* at ¶ 30(a).

[40] *Id.* at ¶ 30(b).

[41] *Id.* at ¶ 30(c).

at its own cost and expense," and "liable for all expenses incurred by C.C.I. in the presentation and prosecution of any such claim."[42]

Only then – after requiring notice to CCI with a request to initiate a claim on AJM's behalf against Wal-Mart – does the subcontract state at ¶ 30(e) that to the extent any such claims involve CCI, the subcontractor and Wal-Mart, such claims should be decided by the same tribunal and in the same forum as claims between CCI and Wal-Mart. In effect, the Ohio subcontract between CCI and AJM sets up a process whereby any dispute AJM seeks to bring against Wal-Mart has to go through CCI in order to be adjudicated in the manner prescribed by Wal-Mart's contract with CCI. It is CCI's involvement that makes an AJM dispute cognizable in the context of a contract AJM has no part in, and CCI's involvement depends on AJM giving it notice of the claim and then assuming all costs and responsibilities of going forward with it.

But notwithstanding AJM's repeated assertions that CCI must have already involved Wal-Mart in CCI's dispute with AJM by making payments for repair work, thus triggering the "same forum and same tribunal" clause,[43] the record contains no evidence that AJM ever formally initiated the contractual process required to involve Wal-Mart in this matter.[44] Specifically, as detailed above, AJM was required by the plain language of its contract with CCI to give written notice to CCI that it should pursue a claim against Wal-Mart on AJM's

---

[42] *Id.*

[43] *See*, ECF # 16 at 3.

[44] *See*, ECF # 1 at ¶¶ 23, 29.

behalf for providing defective site elevations.  Absent such contractually required notice to CCI of a dispute that it must pursue involving AJM and "any aspect" of Wal-Mart's duties under the contract, AJM cannot now maintain that the present situation involves a multi-party dispute that must be adjudicated in the New Jersey forum CCI and Wal-Mart agreed to in their contract for resolving their disputes.

Rather, without any evidence showing CCI was contacted by AJM expressly to initiate a CCI/AJM/Wal-Mart dispute that would contractually trigger the "same forum and same tribunal" language of the CCI/AJM contract that involves a New Jersey forum, the present matter simply involves a claim by CCI against AJM arising out of their contract governed by the plain, unambiguous forum selection clause of that agreement which specifies an Ohio forum.

After determining that the parties' contract here has clearly selected Ohio as the forum for this dispute, AJM's claim that personal jurisdictional is lacking resolves against it by its agreement to that Ohio forum.

## Conclusion

Thus, for the reasons stated above, I find that the federal District Court for the Northern District of Ohio is an appropriate forum under the forum selection clause contractually agreed to by both CCI and AJM. Further, I also find that by agreeing to this forum AJM also consented to personal jurisdiction here. Therefore, AJM's motion to dismiss for lack of personal jurisdiction or alternatively to change venue is denied.

IT IS SO ORDERED.

Dated: April 2, 2014　　　　　　　　　　　　s/ William H. Baughman, Jr.
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge